UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JENNIFER H.,[1]

              Plaintiff,

    v.

ANDREW SAUL,

              Defendant.

Case No.  19-cv-05757-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 14, 16

## I.  INTRODUCTION

Plaintiff Jennifer H. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Andrew Saul, Commissioner of Social Security, denying her claim for disability benefits.  Pending before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 14 (Pl.'s Mot.), 16 (Def.'s Mot.).  Pursuant to Civil Local Rule 16-5, the motions have been submitted without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.

## II.  BACKGROUND

### A.  Age, Education and Work Experience

Plaintiff is 45 years old.  AR 156.  She has a bachelor's degree and attended graduate school.  AR 38.  She previously worked as a nanny, for Growth and Learning Opportunities as an aide for a disabled child and as a retail associate at Gymboree.  AR 39-42, 171, 432, 453, 471,

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

491.

**B.    Medical Evidence**

Plaintiff has been diagnosed with Major Depressive Disorder, severe, recurrent and Post-Traumatic Stress Disorder.  AR 502.

**1.    Treatment Records**

In a clinical therapy note from December 30, 2015, Plaintiff told her treatment provider that medication prescribed by her primary care physician was "very helpful in mitigating her [symptoms]."  AR 510-11.  On January 15, 2016, she reported that her medication helped reduce her depressive symptoms "tremendously."  AR 507-08.  She told her treatment provider she believed her current prescriptions have "contained her 'disabling' depressive [symptoms] (i.e. inability to work, get out of bed, shower, etc.)."  AR 507.  She also indicated "that her last 'disabling' depressive episode was over 1 year ago, before beginning psychotropic medication, but endorsed persistent low mood, low energy, and lack of motivation and sleep disturbance most days."  *Id.*  On mental status examination, Plaintiff's mood was depressed and her affect was restricted (although she demonstrated a sense of humor), but all other findings were normal.  AR 501.

On March 10, 2016, Plaintiff told her therapist that she felt relieved to start psychotherapy and identified two friends who she could rely on for support.  AR 494-95.  On March 15 she reported that she was working as a nanny.  AR 491.  Her mental status examination was normal despite reports of depression and anxiety.  AR 493.  On March 18 Plaintiff described her symptoms as "manageable."  AR 488-89.  On April 7 she described frustration over continuing depressive symptoms but expressed that she enjoyed taking walks on the beach when she felt depressed.  AR 484-85.

On May 10, 2016, Helen Carlile, N.P., opined that Plaintiff was socially withdrawn and awkward, having poor hygiene, poor communication, and experiencing panic attacks with stress.  AR 323-24.  Carlile also opined that Plaintiff had no limitation with respect to handling very short and simple instructions, good ability to carry out instructions, fair ability to attend and concentrate and work without supervision, and fair ability to interact with the public, coworkers, and

United States District Court
Northern District of California

1  supervisors.  *Id.*

2      On June 2, 2016, Plaintiff described an increase in symptoms due to physical complaints

3  and conflict with her partner.  AR 472-73.  She was doing some work as a nanny.  AR 471.  On

4  June 20 she described continuing symptoms but rated her symptoms as a four out of ten.  AR 468-

5  69.

6      On August 12, 2016, Plaintiff reported feeling very productive and hopeful, and that she

7  had interviewed for a job at a preschool.  AR 458.  On September 26 she described improvement

8  in her symptoms, with less depression, more motivation, and more productivity.  AR 455.  She

9  reported less use of alcohol and denied use of all other substances.  *Id.*  On mental status

10 examination, she had clear and linear thought process, euthymic affect, denied anxiety and suicidal

11 and homicidal ideation, and said her sleep was okay.  *Id.*

12     On October 24, 2016, Plaintiff told Carlile that she was working part time as a nanny and

13 had taken her daughter to the zoo.  AR 453.  On mental status examination, Carlile reported that

14 Plaintiff made good eye contact, had okay mood, sad affect, and linear and clear thought process,

15 and denied any suicidal or homicidal ideation.  *Id.*

16     On November 21, 2016, Plaintiff reported that she had been working.  AR 451.  Despite

17 reporting stressors related to taking care of her daughter and her partner's depression, she denied

18 having acute depression and that her medication improved her mood.  *Id.*

19     On January 9, 2017, Plaintiff reported feeling more depressed and unable to sleep.  AR

20 446-50.  On January 17 she continued to report improvement in sleep and mood with new

21 medications.  AR 444.  Carlile noted clear and linear thought process.  *Id.*  On March 13 Plaintiff

22 told Carlile that her medications were helpful and reported better mood, increased activity, better

23 sleep, and less drinking.  AR 440.

24     On July 11, 2017, Plaintiff reported that her brother died in June and she was depressed

25 and staying in bed most days.  AR 435.  On August 14 she reported that she was feeling less

26 depressed, she was drinking less, and she was working part-time as a caretaker for a disabled

27 child.  AR 432.

28     On October 25, 2017, Plaintiff's treatment provider described her as tired but with cheerful

affect. AR 423-24. She discussed her concerns about her daughter's school placement. AR 424-25.

On November 7, 2017, Plaintiff reported that she had stopped drinking and was waking up earlier than usual, she had more energy to practice self-care, and she was commuting with her daughter to school (a 45 minute) every morning. AR 420-21. Her therapist described her affect as cheerful. AR 421.

On December 8, 2017, Plaintiff told Carlile that "she has been mostly stable" and "said she felt overall the meds were beneficial to her mood." AR 419. On mental status examination she had a pleasant, cheerful affect, clear and linear thought process, and described therapy as helpful. *Id.* However, she also reported that she had "persistent depressed mood, irritability, low energy, lack of motivation, social isolation, anhedonia, hypersomnia and insomnia, anxious mood, low self-esteem, disassociation, and decreased ability to self-care." AR 420-21.

On January 12, 2018, Plaintiff had a pleasant and warm affect as she discussed moving forward with weight loss surgery with her therapist. AR 407-08. She reported that she had been able to abstain from alcohol after New Year's and was utilizing a vape pen to control anxiety. AR 408-09. On January 23 and 30 she reported that she been in bed all week due to her depression. AR 404-06. She described feeling anxious about an upcoming visit to her mother's house where she was abused as a child, but she felt proud that she was still able to come to therapy and take care of her child. AR 404-05

On February 13, 2018, Plaintiff disclosed personal feelings of attraction to her therapist. AR 401. She again expressed romantic feelings for her therapist on February 20, but her therapist assured her that "erotic transference [was]. . . a normal part of therapy." AR 399-402.

On February 27, 2018, Plaintiff told her therapist that a book he had recommended was very helpful in helping her process past trauma. AR 396-97. Her therapist praised her for being able to "discuss difficult feelings of shame and embarrassment from the last session." AR 397. Plaintiff also described spending time at the beach with her family and feeling happy. *Id.*

On March 6, 2018, Plaintiff "discussed feeling lighter and brighter and was able to work multiple times last week," and her therapist described her as "making significant insights into her

trauma." AR 395-96.  On March 20, 2018, Plaintiff reported feeling "incapacitated" if she does not have her mental health medication.  AR 392-93.

On March 26, 2018, Plaintiff told Carlile that "she is doing well, taking meds, feels meds are beneficial, as well as ther[apy]." AR 391.  She denied alcohol use, and she described her sleep as good and her moods as stable.  *Id.*

On April 3, 2018, Plaintiff's therapist observed she had a "bright and happy affect congruent with reported feelings." AR 389-90.  Plaintiff described feeling renewed, empowered and hopeful after completing a difficult hike and confronting her mother about childhood abuse, and she was completing a list of places to hike as a way of continuing to utilize her new coping skill.  *Id.*  At her closing therapy session on April 24, her therapist reflected that she had "increased her physical activity and ability for self care practices . . . [and] made significant progress at understanding her [symptoms] . . . and boundary setting with self and others." AR 385-86.

In a Residual Function Capacity Assessment dated July 8, 2018, Carlile opined that Plaintiff is markedly limited in the following areas: ability to work with others, ability to complete a normal workday and work week, ability to interact with the public, and ability to maintain socially appropriate behavior.  AR 375-77.  Carlile also opined that Plaintiff suffers from "chronic symptoms of anxiety, depression, fatigue, eating disorder, fatigue, and poor concentration.  As a result of her psychiatric symptoms, she finds self-care to be extremely difficult.  She is unable to interact with people appropriately and finds most/if not all environments intolerable." AR 377.

As to daily activities, Plaintiff reported at various times that she prepared meals using a crockpot, did laundry, had no trouble with her personal care, and handled full house chore and yard duties.  AR 210, 228, 331.

### 2.      State Agency Opinions

On June 24, 2016, State agency consultant Nadine J. Genece, Psy.D. reviewed the record and determined that Plaintiff's mental impairments were nonsevere.  AR 67.  State agency physician K. Econome, M.D. made the same determination on January 12, 2017.  AR 81-83.

### III.   SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On April 14, 2016, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on January 1, 2016.  AR 156-64.  On June 28, 2016, the agency denied Plaintiff's claim, finding she did not qualify for disability benefits.  AR 91-95.  Plaintiff subsequently filed a request for reconsideration, which was denied on January 13, 2017.  AR 99-103.  On March 17, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 104.  ALJ Lisa Lunsford conducted a hearing on August 28, 2018.  AR 32-59. Plaintiff testified in person at the hearing and was represented by counsel, John Robert Unruh. The ALJ also heard testimony from Vocational Expert Jim Van Eck.

**A.      Plaintiff's Testimony**

Plaintiff testified that she was unable to attend her graduate degree program classes because she was depressed.  AR 38.  The department withdrew her from the program after they were unable to contact her.  AR 39.  She experiences severe depressive episodes that confine her to bed for days on end, cause her to not take care of herself or personal hygiene, and cause her to not take care of her family.  AR 44, 47.  At her last two jobs, she just stopped showing up for scheduled shifts due to her depression symptoms.  AR 44-45.  Plaintiff testified that even if she's not confined to bed during severe depressive episodes, she still experiences an inability to leave her home, fear of interaction with other people, flashbacks, sleep disruptions, anxiety, and panic attacks.  AR 48, 52.

Plaintiff testified that on a typical weekday she cared for her twelve-year-old daughter, including making her breakfast and helping her get ready for school, making her a snack and dinner when she gets home, giving her a bath, and putting her to bed.  AR 51-52.  She was unable to play outside with her daughter or take her to school because of anxiety and panic attacks.  AR 52.

**B.      Vocational Expert's Testimony**

The ALJ asked the vocational expert a series of hypotheticals.  In the first, the ALJ asked the expert to consider

a hypothetical individual with the same age, education, and work

> experience as the claimant, who is limited to . . . medium work, but has the following additional limitations. Can frequently climb, balance, stoop, crouch, and craw; and can have occasional exposure to fumes, odors, dust, gases, and poor ventilation. . . . [W]ould there be any work that that individual could perform?

AR. 54. The expert responded that the individual could perform work as a dishwasher (Dictionary of Occupation Titles ("DOT")[2] 318.687-010, Specific Vocational Preparation ("SVP")[3] level 2), hospital cleaner (DOT 323.687-010, SVP 2), and dining room attendant (DOT 311.677-018, SVP 2). *Id.*

In the second hypothetical, the ALJ added limitations "such that the individual would be further limited to simple tasks, with only occasional changes in work routine. The individual could have no interaction with the public and occasional interaction with co-workers and supervisors. And the individual would be off task ten percent of a workday." AR 55. The expert responded that the individual could still work as a dishwasher and hospital cleaner but removed the dining room attendant and instead added a food mixer (DOT 520.687-034, SVP 2). AR 55-56.

The expert testified that being off task more than 10% of the time would preclude all employment. AR 56. The expert also testified that an employer would not tolerate a second unexcused absence and would terminate the employee. AR 57.

## C. ALJ's Decision and Plaintiff's Appeal

On September 18, 2018, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. AR 12-27. This decision became final when the Appeals Council declined to review it on July 11, 2019. AR 1-3. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On February 21, 2020, Plaintiff

---

[2] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d) (1). The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

[3] "The DOT lists an SVP time for each described occupation. Using the skill level definitions in 20 C.F.R §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." Social Security Ruling 00-4p.

1    filed the present Motion for Summary Judgment.  On March 20, 2020, Defendant filed a Cross-

2    Motion for Summary Judgment.

3                              **IV.   STANDARD OF REVIEW**

4         This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

5    U.S.C. § 405(g).  An ALJ's decision to deny benefits must be set aside only when it is "based on

6    legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d

7    664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  Substantial evidence is "such

8    relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*

9    *v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and quotation marks omitted).  It requires

10   "more than a mere scintilla" but "less than a preponderance" of the evidence. *Id.*; *Trevizo*, 871

11   F.3d at 674.

12        The court "must consider the entire record as a whole, weighing both the evidence that

13   supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

14   simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d at 675 (citation

15   and quotation marks omitted).  However, "[w]here evidence is susceptible to more than one

16   rational interpretation, the ALJ's decision should be upheld." *Id.* (citation and quotation marks

17   omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

18   testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)

19   (citation and quotation marks omitted).

20        Additionally, the harmless error rule applies where substantial evidence otherwise supports

21   the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  "[A]n error is

22   harmless so long as there remains substantial evidence supporting the ALJ's decision and the error

23   does not negate the validity of the ALJ's ultimate conclusion." *Id.* (citation and quotation marks

24   omitted).  A court may not reverse an ALJ's decision because of a harmless error. *Id.* at 1111

25   (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party

26   attacking the agency's determination." *Id.* (citation and quotation marks omitted).

27

28

United States District Court
Northern District of California

8

United States District Court
Northern District of California

# V.   DISCUSSION

## A.   Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[4]  20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "'work done for pay or profit that involves significant mental or physical activities.'"  *Ford*, 950 F.3d at 1148 (internal quotations and citation omitted).  Here, the ALJ determined Plaintiff had not performed substantial gainful activity since February 21, 2016.  AR 17.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'"  *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

---

[4] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

1   impairments: degenerative disc disease, obesity, asthma, depression, anxiety, and post-traumatic

2   stress disorder.  AR 17.

3          At step three, the ALJ evaluates whether the claimant has an impairment or combination of

4   impairments that meet or equals an impairment in the "Listing of Impairments" (referred to as the

5   "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

6   describe impairments that are considered "to be severe enough to prevent an individual from doing

7   any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

8   medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

9   "For a claimant to show that his impairment matches a listing, it must meet all of the specified

10  medical criteria.  An impairment that manifests only some of those criteria, no matter how

11  severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

12  claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

13  to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

14  age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff

15  did not have an impairment or combination of impairments that meets the listings.  AR 18.

16         If the claimant does not meet or equal a listing, the ALJ proceeds to step four, where the

17  ALJ assesses the claimant's residual functional capacity ("RFC"),[5] which is defined as "work that

18  [the claimant has] done within the past 15 years, that was substantial gainful activity, and that

19  lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ

20  determines, based on the RFC, that the claimant can perform past relevant work, the claimant is

21  not disabled.  *Id.* § 404.1520(f).  Here, the ALJ determined Plaintiff has the RFC to

22         Perform medium work as defined in 20 CFR 416.967(c) except she
        can frequently climb, balance, stoop, crouch and crawl. She can
23         tolerate occasional exposure to fumes, odors, dusts, gases, and poor
        ventilation. She is limited to simple tasks with occasional changes in
24         work routine. The claimant cannot have interaction with the public
        and can have occasional interaction with coworkers and supervisors.
25         She will be off task 10 percent of a typical workday.

26  AR 19.  However, the ALJ determined Plaintiff had no past relevant work.  AR 25.

27  _____

28  [5] A claimant's RFC is defined as "the most [the claimant] can still do despite [the claimant's]
    limitations."  20 C.F.R. § 404.1545(a)(1).

United States District Court
Northern District of California

United States District Court
Northern District of California

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404 Subpt. P, App. 2,[6] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use "other resources, such as the DOT. *Id.* Here, the ALJ determined Plaintiff could make a successful adjustment to work that exists in significant numbers in the national economy, and she was therefore not disabled. AR 26-27.

**B.      Plaintiff's Arguments**

Plaintiff raises three arguments: (1) the ALJ erred by failing to give sufficient weight to her treating provider's 2018 RFC Assessment; (2) the ALJ erred by finding that Plaintiff did not meet a listed impairment; and (3) the ALJ's RFC is not supported by substantial evidence.

**C.      ALJ's Assessment of the Medical Opinion Evidence**

The ALJ determined that although Plaintiff was not disabled, her mental impairments caused her to be restricted to simple tasks with only occasional changes in work routine, no interaction with the public, and only occasional interaction with coworkers and supervisors. AR 19. The ALJ further recognized that Plaintiff would be off task for ten percent of a typical workday. AR 19. In assessing this limited RFC, the ALJ gave "great weight" to the May 2016 opinion by Nurse Practitioner Carlile but rejected her July 2018 opinion, which described Plaintiff

---

[6] The Medical-Vocational Guidelines "relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461(1983). The Guidelines "consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Id.* at 461-62 (footnotes omitted). The guidelines are commonly known as "the grids". *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

as significantly more limited.  AR 23.

Plaintiff argues the ALJ erred because she reached this conclusion from "a highly selective reading" of her treatment records and notes.  Pl.'s Mot. at 5.  For instance, although the ALJ refers to Plaintiff "enjoying time with her family at the beach" as evidence of there not being any significant impairment in social adaptation, AR 23, she contends this omits the context in which this session note was taken wherein Plaintiff also states she had not been able to "get out" and enjoy herself "in months." AR 397.  Plaintiff also notes that although the ALJ cites to a treatment note from November 7, 2017 that refers to her having reported more energy to practice self-care, AR 22, she also reported around this same time symptoms of "persistent depressed mood, irritability, low energy, lack of motivation, social isolation, anhedonia, hypersomnia and insomnia, anxious mood, low self-esteem, disassociation, and decreased ability to self-care."  AR 420-21.

### 1. Legal Standard

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence.  20 C.F.R. § 416.927(b); *King v. Berryhill*, 2018 WL 4586726, at *11 (N.D. Cal. Sept. 25, 2018).  In deciding how much weight to give to any medical opinion, the ALJ considers the extent to which the medical source presents relevant evidence to support the opinion.  20 C.F.R. § 416.927(c)(3).  Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, and the degree to which the opinion provides supporting explanations and is consistent with the record as a whole.  20 C.F.R. § 416.927(c)(3)-(4).

In conjunction with the relevant regulations, the Ninth Circuit "developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).  Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing

United States District Court
Northern District of California

1  20 C.F.R. § 404.1527(c)(2)).

2      If a claimant has a treatment relationship with a provider, and clinical evidence supports

3  that provider's opinion and is consistent with the record, the provider will be given controlling

4  weight.  20 C.F.R. § 416.927(c)(2).  "The opinion of a treating physician is given deference

5  because 'he is employed to cure and has a greater opportunity to know and observe the patient as

6  an individual.'"  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)

7  (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).  "If a treating physician's

8  opinion is not given 'controlling weight' because it is not 'well-supported' or because it is

9  inconsistent with other substantial evidence in the record, the [SSA] considers specified factors in

10  determining the weight it will be given."  *Orn*, 495 F.3d at 631.  "Those factors include the

11  '[l]ength of the treatment relationship and the frequency of examination' by the treating physician;

12  and the 'nature and extent of the treatment relationship' between the patient and the treating

13  physician."  *Id.* (citing 20 C.F.R. § 404.1527(c)(2)(i)-(ii)).

14      Additional factors relevant to evaluating any medical opinion, not limited to the
   opinion of the treating physician, include the amount of relevant evidence that
15  supports the opinion and the quality of the explanation provided; the consistency of
   the medical opinion with the record as a whole; the specialty of the physician
16  providing the opinion; and '[o]ther factors' such as the degree of understanding a
   physician has of the [Social Security] Administration's 'disability programs and their
17  evidentiary requirements' and the degree of his or her familiarity with other
   information in the case record.
18

19  *Id.* (citing 20 C.F.R. § 404.1527(c)(3)-(6)).

20      When there is contradictory opinion evidence, an ALJ may reject a treating physician's

21  opinion by providing specific and legitimate reasons supported by substantial evidence.[7]  *See*

22  _____

23  [7] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the
   Evaluation of Medical Evidence."  82 Fed. Reg. 5844.  These final rules were effective as of
24  March 27, 2017.  Some of the new final rules state that they apply only to applications/claims filed
   before March 27, 2017, or only to applications/claims filed on or after March 27, 2017.  *See, e.g.*,
25  20 C.F.R. §§ 404.1527, 416.927 (explaining how an adjudicator considers medical opinions for
   claims filed before March 27, 2017) and 20 C.F.R. §§ 404.1520c, 416.920c (explaining how an
26  adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also*
   Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing
27  proposed implementation process).  Here, the agency's final decision was issued on September 18,
   2018 (AR 27), after the effective date of the final rules, but Plaintiff filed her claim before March
28  27, 2017 (AR 156).  Thus, the 2017 revisions apply to this case, except for those rules that state
   they apply only to applications/claims filed on or after March 27, 2017.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.").  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002) (citation omitted).  It is not a high standard.  *See Biestek*, 139 S. Ct. at 1154 ("[W]hatever the meaning of 'substantial' in other contexts," in the context of judicial review of Social Security decisions, the threshold "is not high.").

### 2.    Application

The Court finds substantial evidence supports the ALJ's assessment of Carlile's opinions.  The ALJ explained that treatment notes, including Carlile's own, showed Plaintiff experienced "mild to moderate symptoms that stabilized over time with therapy and medications."  AR 23.  Thus, the ALJ gave "great weight" to Carlile's 2016 opinion that Plaintiff had no limitation with respect to handling very short and simple instructions, good ability to carry out instructions, fair ability to attend and concentrate and work without supervision, and fair ability to interact with the public, coworkers, and supervisors.  AR 23, 323-24.  For the same reason, the ALJ found Carlile's 2018 opinion describing marked impairment in areas related to concentration and social interaction "not persuasive."  AR 23, 375-77.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ properly discounted treating physician's opinion where there was an "incongruity" between the doctor's questionnaire responses and the doctor's medical records); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").  The ALJ properly concluded that the treatment notes do not suggest a worsening of mental health symptoms between 2016 and 2018.  AR 23.

When Plaintiff initiated treatment for depression in December 2015, she was in graduate school and her medication was helpful in mitigating her symptoms.  AR 21, 511.  In January 2016 she reported that her medication helped reduce her depressive symptoms "tremendously."  AR 21, 508.  On mental status examination, Plaintiff's mood was depressed and her affect was restricted

14

(although she demonstrated a sense of humor), but all other findings were normal.  AR 21, 501.  In March 2016 Plaintiff reported that she was working as a nanny and had two good friends who she could go to for support.  AR 21, 491, 495.  Again, her mental status examination was normal despite reports of depression and anxiety.  AR 21, 493.  Later that month, Plaintiff described her symptoms as "manageable."  AR 21, 489.  In April Plaintiff told her therapist that she enjoyed taking walks on the beach when she felt depressed.  AR 21, 485.  In June she described an increase in symptoms due to physical complaints and conflict with her partner.  AR 21, 473.  By August, however, she reported feeling very productive and hopeful, and had interviewed for a job at a preschool.  AR 21, 458.  The next month, Plaintiff described improvement, with less depression, more motivation, and more productivity.  AR 21-22, 455.  In October 2016 she was working part time as a nanny and took her daughter to the zoo.  AR 22, 453.  On mental status examination, Carlile reported that Plaintiff made good eye contact, had okay mood, sad affect, and linear and clear thought process, and denied any suicidal or homicidal ideation.  AR 22, 453.  In November Plaintiff reported that she had been working, and despite stressors related to taking care of her daughter and her partner's depression, she denied having acute depression, and said overall that her medication had improved her mood.  AR 451.

In January 2017 Plaintiff continued to report improvement with medications, and Carlile again noted clear and linear thought process.  AR 22, 444.  In March she told Carlile again that her medications were helpful and reported better mood, increased activity, better sleep, and less drinking.  AR 22, 440.  In July she experienced heightened depressive symptoms after her brother died, AR 22, 435, but by the next month reported that she felt less depressed and was working part time as a caretaker.  AR 432.  In October Plaintiff's therapist described her as tired but with cheerful affect.  AR 22, 424.  In November she reported that she had stopped drinking and was waking up earlier than usual; she had more energy to practice self-care; her therapist described her affect as cheerful; and she was commuting with her daughter to school (a 45-minute drive) every morning.  AR 22, 420-21.  Plaintiff told Carlile that "she has been mostly stable" and "said she felt overall the meds were beneficial to her mood."  AR 22, 419.  On mental status examination, Carlile noted a pleasant, cheerful affect, clear and linear thought process, and that Plaintiff

United States District Court
Northern District of California

described therapy as helpful.  AR 22, 419.

In January 2018 Plaintiff reported spending a few days in bed due to depression, but also said that she had been able to work more, had continued abstaining from alcohol, and was proud that she was still able to come to therapy and take care of her child.  AR 22, 405, 408-09.  In February she spent time at the beach with her family and described feeling happy.  AR 22, 397.  In March Plaintiff "discussed feeling lighter and brighter and was able to work multiple times last week" and her therapist described her as "making significant insights into her trauma."  AR 22, 392-93, 395-96.  Carlile noted Plaintiff's report that she was doing well, taking meds, felt meds and therapy were beneficial, denied alcohol use, and described her sleep as good and her moods as stable.  AR 391.  In April, Plaintiff's therapist observed she had a "bright and happy affect congruent with reported feelings"; she described feeling renewed, empowered and hopeful after completing a difficult hike and confronting her mother about childhood abuse, and she was completing a list of places to hike as a way of continuing to utilize her new coping skill.  AR 22, 389-90.  At her closing therapy session later that month, Plaintiff's therapist reflected that she had "increased her physical activity and ability for self care practices . . . [and] made significant progress at understanding her [symptoms] . . . and boundary setting with self and others."  AR 22, 386.

As noted above, Plaintiff identifies select excerpts from a handful of notes to show she, at times, reported continuing depressive symptoms.  Pl.'s Mot. at 5-6.  However, the record as a whole shows consistently unremarkable mental status examinations, her own reports that medications were helpful, and the overall positive trajectory of treatment.  *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("Symptoms may wax and wane during the progression of a mental disorder," but they "may also subside during treatment" and "[t]hat is what happened here . . ..").  The ALJ, on the other hand, considered the entire record.  AR 21-22.  The ALJ discounted the State agency consultants' opinions that Plaintiff did not have a mental impairment, AR 24, 66, 81, and assessed a significantly restrictive RFC — Plaintiff could perform simple tasks with only occasional changes in work routine, no interaction with the public, only occasional interaction with coworkers and supervisors, and she would be off task for ten percent of

16

1   a typical workday — that was in line with Carlile's 2016 opinion.  AR 19.  Plaintiff further argues

2   that the fact that she developed romantic feelings for her therapist is further evidence of her

3   "extreme inability to have socially appropriate interactions with others."  Pl.'s Mot. at 6.

4   However, she fails to show how this suggests she could not work within the parameters set by the

5   ALJ.  Indeed, the record reflects that Plaintiff was able to resolve her discomfort, develop new

6   insights into her past trauma, and discover alternative paths to happiness within two weeks of

7   disclosing her feelings to her therapist.  AR 397.  Regardless, the ALJ's reasonable interpretation

8   of the record is entitled to deference.  *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible

9   to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

10          Accordingly, the Court finds the ALJ's decision must be affirmed.

11   **D.      Step Three**

12          At step three, the ALJ determined that "[t]he severity of [Plaintiff's] mental impairments,

13   considered singly and in combination, do not meet or medically equal the criteria of listings 12.04,

14   12.06, or 12.15."  AR 18.  Listing 12.04 addresses depressive, bipolar and related disorders;

15   Listing 12.06 addresses anxiety and obsessive-compulsive disorders; and Listing 12.15 addresses

16   trauma- and stressor-related disorders.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06,

17   12/15.

18          Plaintiff argues she more than satisfies the "paragraph B" criteria of these listings as the

19   record establishes that she is "extremely limited" in more than one broad area of functioning.  Pl.'s

20   Mot. at 7.  She cites to Carlile's 2018 opinion, which states: "As a result of her psychiatric

21   symptoms [Plaintiff] finds self care to be extremely difficult.  She is unable to interact with people

22   appropriately and finds most/if not all environments intolerable."  *Id.* (citing AR 377).  She also

23   notes Carlile checked boxes on the form that reflect at least two marked limitations in the area of

24   sustained concentration and persistence and three marked limitations with social interactions.  *Id.*

25   Plaintiff also argues the ALJ failed to explain why she believes the "paragraph C" criteria is not

26   met, given that her conditions are "serious and persistent."  *Id.* at 8.

27          **1.      Legal Standard**

28          At step three in the sequential process, an ALJ must consider whether a claimant's

United States District Court
Northern District of California

17

conditions meet or equal any of the impairments outlined in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  The listings describe impairments that "would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity."  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original).  If a claimant's "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled."  *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1520(d).  The claimant bears the burden of establishing a prima facie case of disability under the listings.  *See Thomas*, 278 F.3d at 955; 20 C.F.R. § 404.1520(a)(4)(iii).

An impairment meets a listing when *all* the medical criteria required of that listing is satisfied.  20 C.F.R. § 404.1525(c)(3); *Tackett*, 180 F.3d at 1099 ("To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."); *Sullivan*, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").  "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . .."  *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526(a)).

"If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment."  *Id.* (citing 20 C.F.R. § 404.1526(a)).  However, "'[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.'"  *Id.* at 1100 (quoting 20 C.F.R. § 404.1526(a)).  Further, an impairment does not meet the criteria of a listing based only on a diagnosis.  20 C.F.R. § 404.1525(d); *Sullivan*, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995).

United States District Court
Northern District of California

**2.      Application**

In finding that Plaintiff's impairments did not meet a Listing, the ALJ rated Plaintiff's functioning in four areas of mental functioning ("paragraph B criteria").[8]  AR 18-19.  Paragraph B provides the functional criteria an ALJ assesses to evaluate how an impairment limits a claimant's functioning.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b).  The criteria, which represent the areas of mental functioning a person uses in a work setting, are: [1] understand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself.  *Id.*  To satisfy the paragraph B criteria, a claimant's mental impairment must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning.  *Id.*; 20 C.F.R. § 404.1520a(c)(3).  An extreme limitation is an inability to function independently, appropriately, effectively, and on a sustained basis, and a marked limitation is a seriously limited ability to function independently, appropriately, effectively, and on a sustained basis.  Listings § 12.00(F)(2)(d)-(e).

Here, the ALJ found Plaintiff's mental health impairments did not result in at least one extreme or two marked limitations.  AR 18.  Instead, she found Plaintiff had only moderate limitation in understanding, remembering, or applying information because she alleged handling stress and change in routine poorly, but had normal findings on mental status examination; she was considered highly intelligent; and she was enrolled in a graduate program.  *Id.*  She found moderate limitation in interacting with others because Plaintiff alleged having trouble getting along with others, but she spent a lot of time at home with her daughter and had two close friends she could rely on for support.  *Id.*  The ALJ assessed moderate limitation with regard to

---

[8] The listings typically have three sets of criteria: paragraphs A, B, and C.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(A).  The criteria in Paragraph A (except 12.05) "includes the medical criteria that must be present in [the] medical evidence," paragraph B "(except 12.05) provides the functional criteria [assessed], in conjunction with a rating scale" to evaluate how the claimant's mental disorder limits his or her functioning, and paragraph C provides criteria used to evaluate "serious and persistent mental disorders."  *Id.*  Only some of the eleven diagnostic categories of mental disorders have paragraph C criteria and for those categories, the "mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C."  *Id.*  If the claimant satisfies the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) are satisfied, the claimant has a listed impairment.  *Id.*  Intellectual disorder (12.05) "has two paragraphs, designated A and B, that apply only to intellectual disorder."  *Id.*

United States District Court
Northern District of California

1    concentration, persistence, and pace because Plaintiff described having difficulty concentrating

2    and finishing tasks, but she followed written instructions well and spoken instructions fairly well,

3    she reported watching television and reading regularly, and by September 2016, she was attending

4    to more tasks and feeling more motivated.  AR 19.  Finally, the ALJ assessed moderate limitation

5    in adapting or managing oneself because Plaintiff alleged neglecting personal care for days at a

6    time during episodes of depression, but she still cared for her daughter, prepared meals, and told

7    her doctors that she was fully able to care for her personal needs and household duties.  *Id.*

8           Plaintiff does not challenge the evidence the ALJ marshalled to support her findings;

9    instead, she argues the ALJ should have considered other evidence.  The question, however, is not

10   whether other evidence in the record might speak to the paragraph B criteria but whether the

11   ALJ's determination is supported by substantial evidence.  *See Noah v. Berryhill*, 732 F. App'x

12   520, 521 (9th Cir. 2018) (claimant's "arguments do not show the ALJ erred in finding [his]

13   combination of impairments do not fulfill the Paragraph B criteria—rather, [claimant] advocates

14   for an alternative interpretation of the evidence"; "Because the ALJ supported her conclusions

15   concerning [claimant's] level of limitation with substantial evidence and provided a rational

16   interpretation of the record, we will uphold the ALJ's decision").  Moreover, the only evidence

17   Plaintiff cites to support her alternative paragraph B assessment is Carlile's 2018 opinion, which,

18   as discussed above, the ALJ properly discounted.  Such evidence is inadequate for Plaintiff to

19   meet her burden of proof.  *See Burch v. Barnhart*, 400 F.3d 676, 682-83 (9th Cir. 2005)

20   (claimant's listing argument failed because she did not "set forth any evidence which would

21   support the diagnosis and findings of a listed impairment"); *Littledeer v. Colvin*, 2013 WL

22   5272812, at *11 (D. Or. Sept. 17, 2013) ("As discussed above, the ALJ properly rejected the

23   opinions of Ms. Van Epps and Dr. Williams.  The ALJ considered each Listing with respect to the

24   credible evidence in the record and found that Littledeer did not meet the applicable criteria.  Tr.

25   24.  Because he did not err in his evaluation of the medical evidence, the ALJ did not err in finding

26   that Littledeer did not meet a listed impairment."); *Huecias v. Colvin*, 2015 WL 1005410, at *3

27   (C.D. Cal. March 6, 2015) ("The ALJ decision must be affirmed.  The ALJ properly considered

28   the medical evidence, properly rejected the opinion of Plaintiff's treating physician and properly

1    concluded that Plaintiff's impairments did not meet or equal a listing.").

2           Accordingly, the Court finds the ALJ's decision must be affirmed.

3    **E.     RFC**

4           The ALJ determined Plaintiff had the RFC to:

> [P]erform medium work . . .except she can frequently climb, balance, stoop, crouch and crawl. She can tolerate occasional exposure to fumes, odors, dusts, gases, and poor ventilation. She is limited to simple tasks with occasional changes in work routine. The claimant cannot have interaction with the public and can have occasional interaction with coworkers and supervisors. She will be off task 10 percent of a typical workday.

9    AR 19.  Plaintiff argues the ALJ "erroneously omitted [her] frequent inability get out of bed,

10   attend to personal hygiene, or leave her house, [her] tendency to need unscheduled breaks from

11   commitments that last for days and even weeks; and her inability to be around anyone other than

12   her immediate family, her finding most if not all environments intolerable."  Pl.'s Mot. at 8.  She

13   maintains the record establishes she would be off-task a substantial part of the workday and, "[a]s

14   demonstrated by [her] unexcused absences from her last two jobs and her grad school program, it

15   is almost certain [she] would require more than one unexcused absence due to her symptoms."  *Id.*

16   at 9.

17          RFC is assessed by considering all the relevant evidence in a claimant's case record.  20

18   C.F.R. § 404.1545(a)(1).  It is the ALJ's responsibility to assess a claimant's RFC.  20 C.F.R. §

19   404.1546(c); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is

20   the responsibility of the ALJ, not the claimant's physician, to determine residual functional

21   capacity.").  "Generally, the more consistent an opinion is with the record as a whole, the more

22   weight [the ALJ] will give to that opinion."  20 C.F.R. § 416.927(c)(4).

23          The Court finds the ALJ's assessment is supported by substantial evidence.  First, the ALJ

24   explained that Plaintiff's treatment notes were inconsistent with the objective medical evidence

25   (AR 20).  *See* 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to

26   assist us in making reasonable conclusions about the intensity and persistence of your symptoms

27   and the effect those symptoms, such as pain, may have on your ability to work[.]").  As discussed

28   above, although Plaintiff described being confined to bed or unable to leave the house at times due

United States District Court
Northern District of California

21

to depression, anxiety, and post-traumatic stress disorder, she consistently attended therapy and medication management sessions with Carlile, she described her medications as helpful in managing her symptoms, her mental status examinations were unremarkable, she worked part-time, she stopped drinking, she took care of her daughter, her treatment providers described her as cheerful, she effectively utilized techniques to deal with past trauma, and she developed new coping skills like taking walks on the beach and hiking.  Based on this record, the ALJ reasonably concluded that Plaintiff's treatment notes did not support her statements regarding her subjective symptoms.  *See Turner v. Comm'r*, 613 F.3d 1217, 1224-25 (9th Cir. 2010) (ALJ properly rejected the claimant's assertion that he could not "put up" with "most people" and his suggestion that this limitation left him unable to work, because (1) two doctors found him cooperative and pleasant; (2) the claimant told his doctor that he had been able to develop control over his anger; (3) the claimant's residence on a ranch reflected the confidence that others had in him to perform tasks and that he adequately dealt with people when he went into town to obtain supplies or to the VA for examinations; and (4) he was capable of developing a personal relationship during this time that resulted in marriage).

Second, the ALJ observed that Plaintiff "retained a basic level of functionality despite her severe allegations."  AR 20.  As the ALJ pointed out, Plaintiff cared for her daughter, cooking for her, bathing her, getting her ready for school, commuting with her, and cleaning up after her.  AR 20, 51-52, 210.  Plaintiff also prepared meals using a crockpot, did laundry, had no trouble with her personal care, and handled full house chore and yard duties.  AR 20, 210, 228, 331.  Her ability to engage in these activities was inconsistent with her claim that she had debilitating mental impairments.  *See Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment").

Third, the ALJ noted that Plaintiff also alleged disability based in part on physical impairment, AR 20, 190, 209, but her treatment was conservative and she sought it inconsistently, AR 22-23.  This was also a valid reason for the ALJ to discount Plaintiff's statements.  *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (subjective pain complaints properly

22

1    discredited where claimant received "minimal" and "conservative" treatment); *Tommasetti*, 533

2    F.3d at 1039 ("The ALJ may consider many factors in weighing a claimant's credibility,"

3    including "unexplained or inadequately explained failure to seek treatment or to follow a

4    prescribed course of treatment").

5           Plaintiff contends the RFC limitation giving her the latitude to be off task ten percent of

6    the time was arbitrary (AR 19), but she has failed to show how she was harmed by the ALJ's

7    decision to give her the benefit of the doubt and include this additional limitation in the RFC.  *See*

8    *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("Reversal on account of error is not

9    automatic, but requires a determination of prejudice. . . .  The burden is on the party claiming error

10   to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say,

11   not merely his procedural rights.") (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)).

12   Additionally, Plaintiff contends she simply could not work based on the number of absences she

13   accumulated in her prior work and in her graduate program.  The ALJ, however, thoroughly

14   reviewed Plaintiff's treatment notes and the opinion evidence from the relevant period and did not

15   find any evidence-based reason why Plaintiff's impairments should preclude her from performing

16   work at the opined RFC level.

17          Finally, although Plaintiff argues the ALJ's RFC assessment did not fully incorporate her

18   subjective complaints, she does not actually contest the ALJ's decision except to argue that the

19   ALJ should have accepted her testimony at face value and incorporated those limitations into the

20   RFC.  The Court may therefore decline to reach the claim.  *See Carmickle v. Comm'r*, 533 F.3d

21   1155, 1161 n.2 (9th Cir. 2008) ("We do not address this finding because [claimant] failed to argue

22   this issue with any specificity in his briefing"); *Indep. Towers of Washington v. Washington*, 350

23   F.3d 925, 929 (9th Cir. 2003) (finding that party had forfeited issue on appeal where, "[b]eyond its

24   bold assertion, [plaintiff] provides little if any analysis to assist the court in evaluating its legal

25   challenge").  Regardless, as discussed above, the Court finds the ALJ properly discounted

26   Plaintiff's statements regarding the severity of her symptoms.  AR 20-23.

27          Because the ALJ's analysis on these issues was legally sufficient, the Court must find that

28   the ALJ's RFC assessment was correct.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

1197 (9th Cir. 2004) (In determining a plaintiff's RFC, the ALJ is not required to incorporate the claimant's properly rejected testimony or statements nor is he "required to incorporate evidence from the opinions of [the claimant's] treating physicians, which were permissibly discounted"); *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("because the ALJ provided specific and legitimate reasons supported by substantial evidence to give less weight to [the examining physician's] opinion, we conclude that the ALJ did not err in basing the RFC on [the DDS non-examining physician's] findings rather than [the examiner's]") (alterations in original).  Further, the Court notes that RFC is an administrative finding, not a medical determination, and need not match any one physician's opinion.  *See* 20 C.F.R. § 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner"); *Vertigan*, 260 F.3d at 1049 ("[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity").  The ALJ is responsible for assessing a claimant's RFC based on the record as a whole.  *See* 20 C.F.R. § 416.945(a).

Accordingly, the ALJ's decision must be affirmed.

## VI.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: June 12, 2020

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California